# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

ST. TAMMANY PARISH GOVERNMENT, )
                                           )
              Plaintiff, )
                                             )
      v. )
                                             )
PURDUE PHARMA L.P.; PURDUE PHARMA )
INC.; THE PURDUE FREDERICK COMPANY, )
INC.; TEVA PHARMACEUTICAL INDUSTRIES, )
LTD; TEVA PHARMACEUTICALS USA, INC.; )
CEPHALON, INC.; JOHNSON & JOHNSON; )    Case No. _____
JANSSEN PHARMACEUTICALS, INC.; )    (Removal from: Twenty-Second
ORTHO-MCNEIL-JANSSEN )    Judicial District Court for the Parish
PHARMACEUTICALS, INC. N/K/A JANSSEN )    of St. Tammany, No. 2018-13660)
PHARMACEUTICALS, INC.; JANSSEN )
PHARMACEUTICA, INC. N/K/A JANSSEN )
PHARMACEUTICALS, INC.; NORAMCO, INC.; )
ENDO HEALTH SOLUTIONS INC; ENDO )
PHARMACEUTICALS INC.; ALLERGAN PLC )
F/K/A ACTAVIS PLS; WATSON )
PHARMACEUTICALS, INC. N/K/A ACTAVIS, )
INC.; WATSON LABORATORIES, INC.; )
ACTAVIS LLC; ACTAVIS PHARMA, INC. F/K/A )
WATSON PHARMA, INC.; MALLINCKRODT )
PLC; MALLINCKRODT LLC; INSYS )
THERAPEUTICS, INC.; MCKESSON )
CORPORATION; CARDINAL HEALTH, INC.; )
AMERISOURCEBERGEN DRUG )
CORPORATION; AND MORRIS AND )
DICKSON CO., INC., )
                                             )
              Defendants. )

## NOTICE OF REMOVAL

     PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367,

Defendant McKesson Corporation ("McKesson") has removed the above-captioned action from

the Twenty-Second Judicial District Court for the Parish of St. Tammany, Louisiana, to the

United States District Court for the Eastern District of Louisiana. As grounds for removal,

McKesson states as follows:

## I.    NATURE OF REMOVED ACTION

1.     On July 27, 2018, the St. Tammany Parish Government ("Plaintiff") filed *St. Tammany Parish Government v. Purdue Pharma L.P., et al.* in the Twenty-Second Judicial District Court for the Parish of St. Tammany.  The court assigned this action Case No. 2018-13660.

2.     The Complaint names two discrete groups of defendants.

3.     The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma Inc.; the Purdue Frederick Company, Inc.; Teva Pharmaceutical Industries, Ltd.[1]; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Allergan PLC f/k/a Actavis PLS; Watson Pharmaceuticals, Inc. n/k/a Actavis, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Mallinckrodt plc; Mallinckrodt LLC; and Insys Therapeutics, Inc. (collectively, "Manufacturer Defendants").

4.     The second group of defendants consists of McKesson; Cardinal Health, Inc.; AmerisourceBergen Drug Corporation; and Morris and Dickson Co., Inc. (collectively, "Distributor Defendants").

5.     Plaintiff complains of the over-distribution of prescription opioids, alleging that the "unlawful conduct by the Distributor Distributors [sic] is responsible for the volume of prescription opioids plaguing Plaintiff's Community."  Compl. ¶ 8.

---

[1]  Teva Pharmaceuticals Industries Ltd. is incorrectly named in the Complaint as "Teva Pharmaceutical Industries, Ltd."

2

6.      The Complaint asserts nine causes of action against McKesson and the other Distributor Defendants: public nuisance (Count I); violation of the Louisiana Racketeering Act (Count II); redhibition (Count IV); false advertising (Count V); misbranding drugs or devices (Count VI); violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (Count VII); negligence and negligent misrepresentation (Count VIII); fraud and fraudulent misrepresentation (Count IX); and unjust enrichment (Count X). *See* Compl. ¶¶ 284-409, 439-541.

7.      The Complaint asserts an additional claim, violation of the Louisiana Products Liability Act (Count III), against only the Manufacturer Defendants. *See id.* ¶¶ 410-38.

8.      Although Plaintiff purports to disavow stating a federal question, Compl. ¶ 38, Plaintiff's claims against the Distributor Defendants stem from an alleged duty to "monitor, detect, investigate, refuse to fill, and report suspicious orders of prescription opioids," *id.* ¶ 147. Plaintiff pleads that the Distributor Defendants breached those duties when they "failed to report 'suspicious orders' originating from Plaintiff's Community," *Id.* ¶ 177, and "unlawfully filled suspicious orders," *id.* ¶ 178.

9.      Because the duties governing reporting and shipping "suspicious" opioid orders arise only from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiff pleads that alleged violations of federal law form the basis for its claims.

10.      McKesson has not responded to the Complaint, and McKesson's response is not due until October 16, 2018, pursuant to a stipulation between Plaintiff, McKesson, and other defendants.

11.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan

Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407.  *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328.  McKesson intends to tag this case immediately for transfer to the MDL.

12.     In accordance with 28 U.S.C. § 1446(a), copies of the docket sheet and a copy of all process, pleadings, and orders served upon McKesson in the state court action are attached as **Exhibit A**.

## II.      TIMELINESS OF REMOVAL

13.     Plaintiff served McKesson with the Complaint on August 17, 2018.

14.     In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of service of Plaintiff's Complaint.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

15.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."  28 U.S.C. § 1446(b)(2)(C).

## III.     PROPRIETY OF VENUE

16.     Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.

## IV.     BASIS OF REMOVAL

17.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*

18.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

19.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

20.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[2]

21.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in

---

[2] A defendant need not overcome any artificial presumptions against removal or in favor of remand.  In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand.  *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . .  Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331."  132 S. Ct. 740, 749 (2012) (brackets, citations, and internal quotation marks omitted).

federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258.

22.     As set forth below, this case meets all four requirements.[3]

23.     Although Plaintiff ostensibly pleads some of its theories of recovery against McKesson as state law claims, it bases the underlying theory of liability on McKesson's alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that McKesson allegedly had a duty to identify, report, and then not ship.

24.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. *See* 21 C.F.R. § 1301.74(b) ("The registrant shall inform the Field Division Office of the [DEA] in his area of suspicious orders when discovered by the registrant").

25.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the DEA. Specifically, the DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders

---

[3] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

that might be diverted to unlawful uses.  *See Masters Pharmaceutical, Inc. v. DEA*, 861 F.3d

206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration,

72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (Drug Enf't Admin. July 3, 2007), as source of

DEA's "Shipping Requirement").

26.    Plaintiff's theories of liability against McKesson and other Distributor

Defendants, as pled in the Complaint, are predicated on allegations that McKesson and the

Distributor Defendants breached alleged duties under the CSA to implement effective controls to

detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to

Plaintiff's claims—to refuse to ship such orders to St. Tammany pharmacies.

27.    Specifically, Plaintiff invokes federal law and pleads that McKesson and the other

Distributor Defendants violated the CSA with, among others, the following allegations:

a.    "At all relevant times, the Distributor Defendants have distributed, supplied, sold, and placed into the stream of commerce the prescription opioids, without fulfilling the fundamental duty of wholesale drug distributors to detect and warn of diversion of dangerous drugs for non-medical purposes. The Distributor Distributors universally failed to comply with federal and/or state law."[4] Compl. ¶ 30.

b.    "The Distributor Defendants owe legal duties under to [sic] monitor, detect, investigate, refuse to fill, and report suspicious orders of prescription opioids originating from Plaintiff's Community as well as those orders which the Distributor Defendants knew or should have known were likely to be diverted into Plaintiff's Community."  *Id.* ¶ 147.

c.    "Each Distributor Defendant repeatedly and purposefully breached its legal duties."  *Id.* ¶ 149.

d.    "In addition to reporting all suspicious orders, distributors must also stop shipment on any order which is flagged as suspicious and only ship orders which were flagged as potentially, suspicious if, after conducting due diligence, the distributor can determine that the order is not likely to be

---

[4]  As explained below, Plaintiff fails to cite any state law provisions requiring Distributor Defendants to report or halt suspicious orders.  Accordingly, Plaintiff's passing references to "state law" throughout the Complaint are mere surplusage.

diverted into illegal channels.   Regardless, all flagged orders must be reported." *Id.* ¶ 161.

e.      "A distributor, in addition to reporting suspicious orders, has a legal responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate medical, scientific, and industrial channels." *Id.* ¶ 166.

f.      "A distributor's investigation must dispel all the red flags giving rise to suspicious circumstances prior to shipping a suspicious order." *Id.* ¶ 168.

g.      "The Distributor Defendants knew they were required to monitor, detect, and halt suspicious orders [. . .] If an order meets or exceeds a distributor's threshold, as defined in the distributor's monitoring system or is otherwise characterized by the distributor as an order of interest, the distributor should not ship to the customer, in fulfillment of that order, any units of the specific drug code product as to which the order met or exceeded a threshold or as to which the order was otherwise characterized as an order of interest." *Id.* ¶ 170.

h.      "Each Distributor Defendant owes and has owed duties to monitor and detect suspicious orders of prescription opioids; investigate and refuse suspicious orders of prescription opioids; report suspicious orders of prescription opioids; and prevent the diversion of prescription opioids into illicit markets in the State and Plaintiff's Community." *Id.* ¶ 172.

i.      "The Distributor Defendants unlawfully filled suspicious orders of unusual size, orders deviating substantially from a normal pattern and/or orders of unusual frequency in Plaintiff's Community, and/or in areas from which the Distributor Defendants knew opioids were likely to be diverted to Plaintiff's Community." *Id.* ¶ 178.

j.      "The Distributor Defendants breached their duty to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates originating from Plaintiff's Community, and/or in areas from which the Distributor Defendants knew opioids were likely to be diverted to Plaintiff's Community. *Id.* ¶ 179.

k.      "The Distributor Defendants breached their duty to 'design and operate a system to disclose to the registrant suspicious orders of controlled substances' and failed to inform the authorities including the DEA of suspicious orders when discovered, in violation of their duties under federal and state law." *Id.* ¶ 181.

l.      "The Distributor Defendants supplied prescription opioids to obviously suspicious physicians and pharmacies." *Id.* ¶ 185.

m.   "The Distributor Defendants' repeated shipments of suspicious orders, over an extended period of time, in violation of public safety statutes, and without reporting the suspicious orders to the relevant authorities demonstrates wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others."  *Id.* ¶ 188.

n.   "The Distributor Defendants have continued to unlawfully ship these massive quantities of opioids into communities like the Plaintiff's Community, fueling the epidemic."  *Id.* ¶ 212.

28.   Plaintiff does not identify a state law source for a requirement that wholesale pharmaceutical distributors identify and report suspicious orders of controlled substances to a Louisiana government official or entity, and does not and cannot identify any state law source for a requirement that wholesale pharmaceutical distributors "stop" or "halt" suspicious orders of controlled substances from registered pharmacies.  Thus, Plaintiff's claims against Distributor Defendants, as Plaintiff pleads them, arise under federal law.

29.   The Louisiana laws and regulations cited by Plaintiff require distributors to "adhere to written policies and procedures, which shall be followed for the receipt, security, storage, inventory, and distribution of drugs or devices, including policies and procedures for identifying, recording, and reporting losses or thefts" and to notify the state Board of Pharmacy after discovering "theft or diversion of a drug."  *See* Compl. ¶ 158 (citing 46 La. Admin. Code Pt. XCI § 313; La. Rev. Stat. Ann. § 40:974(A)(1), (A)(4)).  These narrow provisions, which relate only to the reporting of diversion from distributors' inventory caused by *warehouse theft and internal pilferage*, are not analogous to the CSA's requirement that distributors report suspicious orders from third parties to government authorities.  Moreover, neither these provisions, nor any other in Louisiana, contains the alleged requirement to "stop" or "halt" suspicious orders of controlled substances to such third parties.  That requirement is found only in the implementing regulations of the CSA.

30.     Furthermore, Plaintiff's theory of liability also relies on expansive reading of federal law that calls into question an agency determination. Plaintiff alleges not only that Distributor Defendants should have detected and reported discrete suspicious orders by individual pharmacies, but that Distributor Defendants should have recognized that the *total volume* of prescription opioids distributed to various regions was suspicious or unreasonable. *See, e.g.*, Compl. ¶ 176 (alleging that the "sheer volume of prescription opioids distributed to pharmacies in the Plaintiff's Community [. . .] is excessive for the medical need of the community" and that "[s]ome red flags are so obvious that no one who engages in the legitimate distribution of controlled substances can reasonably claim ignorance of them."); *id.* ¶ 212 (alleging that Distributor Defendants unlawfully ship "massive quantities into communities like the Plaintiff's community, fueling the epidemic.").

31.     To succeed on that theory, Plaintiff would thus have to show that the total quantity of prescription opioids that all pharmaceutical distributors distributed was unreasonable. However, the total amount of prescription opioids distributed in any given year turns on annual aggregate production quotas established by the DEA.  Specifically, the DEA must "determine the total quantity of each basic class of controlled substance listed in Schedule I or II necessary to be manufactured during the following calendar year to provide for the estimated medical, scientific, research and industrial needs of the United States, for lawful export requirements, and for the establishment and maintenance of reserve stocks." 21 C.F.R. § 1303.11(a).  In making this determination, the DEA must consider "[p]rojected demand" for such substances.  21 C.F.R. § 1303.11(b).  Thus, to show that the total quantity of prescription opioids that distributors

distributed was unreasonable, Plaintiff would have to show that the annual aggregate production quotas set by the DEA, pursuant to a federal statute, were themselves unreasonable.[5]

32.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.

33.     ***First***, Plaintiff's state law claims "necessarily raise" a federal question because "the right to relief depends upon the construction or application of federal law."  *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (internal quotations and citation omitted); *see also N. Carolina by & through N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

34.     As pled, Plaintiff's claims against McKesson and the other Distributor Defendants require Plaintiff to establish that Distributor Defendants breached duties under federal law.

---

[5] Moreover, 21 U.S.C. § 827(d)(1) requires Distributor Defendants to report to DEA "every sale, delivery or other disposal" by them of prescription opioids.  In other words, it has been the case for years that each Distributor Defendant has reported to DEA the total volume of prescription opioids it distributed. To succeed on its theory of liability that Distributor Defendants should have recognized and reported that the total volume of prescription opioids was unreasonable, Plaintiff would have to show that Distributor Defendants' existing reporting to the DEA was inadequate.

35.     For example, in support of its negligence claim, Plaintiff alleges that Distributor Defendants "breached their duties to exercise due care in the business of wholesale distribution of dangerous opioids, which are Schedule II Controlled Substances, by failing to monitor for, failing to report, and filling highly suspicious orders time and again."  Compl. ¶ 511.  Despite Plaintiff's efforts to couch the duty to report suspicious orders in terms of state tort law, its sole source is the federal CSA.  Plaintiff's negligence claim, which is predicated on the violation of this "singular duty . . .  [that] derives directly from federal law," thus necessarily raises disputed issues of federal law.  *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1022 (2d Cir. 2014).  *See also Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co.*, 850 F.3d 714, 723 (5th Cir. 2017) ("The absence of any state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable means that that duty would have to be drawn from federal law.").  Thus, although plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here alleges violations of federal law as the basis for its state-law claims.[6]

---

[6] Furthermore, it is not necessary for federal jurisdiction that McKesson establish that all of Plaintiff's counts against it raise a federal question.  Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction:  "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"  *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiff's remaining counts against McKesson and the other Distributor Defendants, which are so related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a).

36.     Similarly, Plaintiff's public nuisance claim depends on the allegation that Distributor Defendants "unlawfully and/or intentionally distributed opioids or caused opioids to be distributed without maintaining effective controls against diversion" by failing to "monitor for suspicious orders, report suspicious orders, and/or stop shipment of suspicious orders." Compl. ¶ 296, 316-17.   Because the lawful distribution of prescription drugs to registered pharmacies cannot qualify as a prohibited activity under Louisiana's public nuisance statutes, the viability of Plaintiff's claim turns on violations of the alleged reporting and shipping requirements, which are found only in the federal CSA and its implementing regulations.

37.     In sum, the Complaint necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA.

38.     As noted, the Complaint also raises a federal issue because it implicates the actions of a federal agency.  *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) ("The dispute [in *Grable*] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases.").  Specifically, while Plaintiff alleges that the total volume of prescription opioids distributed by Distributor Defendants was unreasonable or suspicious, that figure turns on production quotas set by the DEA.  Plaintiff's theory of liability thus calls into question the validity of the DEA's determinations under federal law.  *See Bd. of Comm'rs of the Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co.*, 29 F. Supp. 3d 808, 862 (E.D. La. 2014) ("While Plaintiff may not be expressly challenging a specific action of a federal agency, the breadth of Plaintiff's claims amounts to a collateral attack on an entire regulatory scheme."); *McKay v. City & Cty. of San Francisco*, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (concluding that complaint

necessarily raises federal issue where "plaintiffs' claims are 'inescapably intertwined' with a collateral attack on an [agency] order").

39.    **Second**, this federal issue is "actually disputed" because the parties disagree as to the scope of alleged duties arising under the CSA and whether Distributor Defendants violated their duties that, as Plaintiff pleads them, arise only under the CSA.  Indeed, this federal issue is the "central point of dispute."  *Gunn*, 568 U.S. at 259.

40.    **Third**, the federal issue presented by Plaintiff's claims is "substantial."  "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole."  *Gunn*, 568 U.S. at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law."  *Id.* at 260-62 (internal quotation and citation omitted).  As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312.

41.    Plaintiff's theories of Distributor Defendants' liability necessarily require that a court determine the existence and scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation.  Compl. ¶ 162 (Prescription opioids "are regulated for the purpose of providing a closed system intended to reduce the widespread diversion of these drugs out of legitimate channels into the illicit market, while at the same time providing the legitimate drug industry with a *unified* approach to narcotic and dangerous drug control.") (emphasis added).  Indeed, Congress designed the CSA

with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st. Cong., 2nd Sess. 1970, *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

42.     Plaintiff's theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d at 1024.  The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801.  Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction").

43.     Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action.  In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction.

The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 316; *see also, e.g.*, *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

44.     Removal is particularly appropriate here because Plaintiff's action is but one of more than 1,300 similar actions nationwide, more than 1,000 of which are pending in the MDL in the Northern District of Ohio.  Indeed, opioid use and addiction is not merely a local issue, and Plaintiff acknowledges that this is a "national crisis." *See, e.g.*, Compl. ¶¶ 44, 46, 214.  The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[7]

45.     **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court interpreting or applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—interprets and applies them.  Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

---

[7] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018.  Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

46.     In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314; *see also, e.g.*, *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315–18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question.  Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck*, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

47.     To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Manufacturer Defendants and Distributor Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.     OTHER REMOVAL ISSUES

48.     Under 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served must join or consent to removal.

49.   The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below:  Purdue Pharma L.P.; Purdue Pharma Inc.; the Purdue Frederick Company, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Teva Pharmaceuticals USA, Inc.; Actavis LLC; Actavis Pharma Inc. f/k/a Watson Pharm, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Mallinckrodt LLC; Insys Therapeutics, Inc.; Cardinal Health, Inc.; AmerisourceBergen Drug Corporation; Morris and Dickson Co., Inc.

50.   The following Defendants maintain that they have not been properly served, and thus their consent to removal is not required: Teva Pharmaceuticals Industries Ltd.; Cephalon, Inc.; Watson Laboratories, Inc.; Allergan plc f/k/a Actavis plc[8]; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.[9]; Mallinckrodt plc.  Nevertheless, out of an abundance of caution, they consent to removal.  The Defendants listed in this paragraph expressly reserve, and do not waive, all defenses regarding service of process and personal jurisdiction.

---

[8] The state court docket indicates a purported proof of service for Allergan plc f/k/a Actavis plc that was served on Corporate Creations Network, Inc. in Louisiana.  However, Allergan plc, an Irish company, does not have any registered agents in the United States and contests the validity of this service.

[9] The state court docket also indicates a purported proof of service for Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. n/k/a Allergan Finance, LLC that also was served on Corporate Creations Network, Inc. in Louisiana.  However, Allergan Finance, LLC does not have a registered agent in Louisiana and contests the validity of this service.  It appears Plaintiff improperly served Actavis Pharma, Inc., a separate entity no longer affiliated with Allergan plc, with the service for both Allergan plc and Allergan Finance, LLC.

51.     By filing this Notice of Removal, neither McKesson nor any other Defendant waives any defense that may be available to them, and Defendants expressly reserve all such defenses, including those related to personal jurisdiction and service of process.

52.     If any question arises as to propriety of removal to this Court, McKesson requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

53.     Pursuant to 28 U.S.C. § 1446(d), McKesson will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

54.     McKesson reserves the right to amend or supplement this Notice.

**WHEREFORE**, McKesson removes this action from the Twenty-Second Judicial District Court for the Parish of St. Tammany, No. 2018-13660, to this Court.


September 17, 2018                        BLANCHARD, WALKER, O'QUIN & ROBERTS
                                              (A Professional Law Corporation)


                                         By:        /s/ W. Michael Adams
                                              W. Michael Adams, Bar #2338
                                                Scott R. Wolf, Bar #28277
                                              Stacey D. Williams, Bar #22689

                                         Post Office Drawer 1126
                                         Shreveport, Louisiana 71163-1126
                                         Telephone: (318) 221-6858
                                         Telecopier: (318) 227-2967
                                         E-Mail:    madams@bwor.com
                                                    swolf@bwor.com
                                                    swilliams@bwor.com

                                         ATTORNEYS FOR DEFENDANT, MCKESSON
                                         CORPORATION

**CONSENT OF OTHER DEFENDANTS:**

Consent to removal on behalf of Defendant
AMERISOURCEBERGEN DRUG
CORPORATION:

/s/ *Richard M. Crump*
Richard M. Crump (La. #30460)
Robert E. Dille (La. #23037)
Shelley K. Napolitano (La. #34692)
MARON MARVEL BRADLEY ANDERSON
& TARDY LLC
Place St. Charles
201 St. Charles Ave., Suite 2411
New Orleans, Louisiana 70170
Telephone: (504) 684-5100
Facsimile: (504) 687-0067

Consent to removal on behalf of Defendant
CARDINAL HEALTH, INC.:

/s/ *Franklin J. Foil*
Franklin J. Foil, (La. #20660)
412 N. Fourth St. Suite 240
Baton Rouge, LA 70802
(225) 382-3264
(225) 382-3268 Fax
ffoil@foillaw.com

Consent to removal on behalf of Defendants
PURDUE PHARMA L.P., PURDUE PHARMA
INC., and THE PURDUE FREDERICK COMPANY
INC.:

/s/ *Paul B. Simon*
Paul B. Simon (La. #33679)
Samuel E. Masur (La. #1221)
GORDON ARATA MONTGOMERY
BARNETT
400 East Kaliste Saloom Road
Suite 4200
Lafayette, Louisiana 70508
Tel: (337) 237-0132
Fax: (337) 237-3451
PSimon@gamb.law
SMasur@gamb.law

Mark S. Cheffo*
DECHERT LLP
Three Bryant Park, 1095 Avenue of the Americas
New York, NY 10036-6797
Tel: (212) 698-3500
Fax: (212) 698-3599
Mark.Cheffo@dechert.com

*denotes national counsel who will seek pro hac vice admission*

Consent to removal on behalf of Defendant NORAMCO, INC.:

s/ *Daniel G. Jarcho*
Daniel G. Jarcho*
D.C. Bar No. 391837
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3254
Facsimile: (202) 239-333
E-mail: daniel.jarcho@alston.com

Cari K. Dawson*
Georgia Bar No. 213490
Jenny A. Mendelsohn*
Georgia Bar No. 447183
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
cari.dawson@alston.com
jenny.mendelsohn@alston.com

*denotes national counsel who will seek pro hac vice admission*

Consent to removal on behalf of Defendants ENDO HEALTH SOLUTIONS INC. and ENDO PHARMACEUTICALS INC.

/s/ *Kerry J. Miller*
Kerry J. Miller (#24562)
Daniel J. Dysart (#33812)
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-8646
Facsimile: (504) 585-6946
Email: kjmiller@bakerdonelson.com
Email: ddysart@bakerdonelson.com

David D. Fauvre*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 942-5000
Email: david.fauvre@arnoldporter.com

*\* denotes national counsel who will seek pro hac vice admission*

Consent to removal on behalf of Defendants TEVA PHARMACEUTICALS INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., CEPHALON, INC., WATSON LABORATORIES, INC., ACTAVIS LLC, and ACTAVIS PHARMA, INC. F/K/A WATSON PHARMA, INC.:

/s/ *Richard S. Crisler*
Richard S. Crisler [#28007]
Michael C. Mims [#33991]
BRADLEY MURCHISON KELLY & SHEA LLC
1100 Poydras St., Ste. 2700
New Orleans, La 70163
Tel.: 504.596.6300
Fax: 504.596.6301
rcrisler@bradleyfirm.com
mmims@bradleyfirm.com

Leland G. Horton [#26928]
BRADLEY MURCHISON KELLY & SHEA
LLC
401 Edwards St., Ste. 1000
Shreveport, La 71101
Tel.: 318.227.1131
Fax: 318.227.1141
lhorton@bradleyfirm.com

Harvey Bartle*
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540-6241
T: (609) 919-6685
harvey.bartle@morganlewis.com

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T: (215) 963-5000
steven.reed@morganlewis.com

Brian M. Ercole*
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL  33131-2339
T: (305) 415 3416
brian.ercole@morganlewis.com

*denotes national counsel who will seek pro hac vice
admission*

Consent to removal on behalf of Defendants
JOHNSON & JOHNSON, JANSSEN
PHARMACEUTICALS, INC., ORTHO-MCNEIL-
JANSSEN PHARMACEUTICALS, INC. N/K/A
JANSSEN PHARMACEUTICALS, INC., and
JANSSEN PHARMACEUTICA, INC. N/K/A
JANSSEN PHARMACEUTICALS, Inc.:

/s/ *Kelly Juneau Rookard*
James B. Irwin (#7172)
David W. O'Quinn (#18366)
Douglas J. Moore (#27706)
Kelly Juneau Rookard (#30573)

Irwin Fritchie Urquhart & Moore LLC
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Tel: (504) 310-2100
Fax: (504) 310-2101
jirwin@irwinllc.com
doquinn@irwinllc.com

Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000
clifland@omm.com

*denotes national counsel who will seek pro hac vice admission*

Consent to removal on behalf of Defendant
INSYS THERAPEUTICS, INC.:

/s/ J. Matthew Donohue
J. Matthew Donohue*
Joseph L. Franco*
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300
Facsimile: 503.241.8014
matt.donohue@hklaw.com
joe.franco@hklaw.com

*denotes national counsel who will seek pro hac vice admission*

Consent to removal on behalf of Defendant MORRIS
AND DICKSON CO., INC.:

/s/ Frank H. Spruiell, Jr.
Frank H. Spruiell, Jr.
WIENER, WEISS & MADISON, APC
330 Marshall St., Ste. 1000
Shreveport, Louisiana 71101
Telephone: 318.213.9281
fspruiell@wwmlaw.com

24

Consent to removal on behalf of Defendants
MALLINCKRODT LLC AND MALLINCKRODT
PLC:

*/s/* Brien T. O'Connor
Brien T. O'Connor*
Andrew J. O'Connor*
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*\* denotes national counsel who will seek pro hac vice
admission*